I'm sitting with Judge Patrick Higginbotham from Texas and Judge Higginson and I are bringing up the Louisiana court here. It's best to deal with all these Texas cases, but we'll do the best we can to get through them. We have four cases to argue. We'll see how it goes, whether we take a break between the second and third, but in the meantime, first case up is 23-2043 United States v. Plezia. Mr. Newton, you're up, sir. Good morning and may it please the court. Time permitting, I will address five issues this morning, all of which concern whether there is sufficient evidence supporting Mr. Plezia's four convictions. Were you trial counsel? You're on appeal, right? I was sentencing counsel. I was not trial counsel. I was brought in after the trial was over. I'll begin with count one, the Klein conspiracy conviction. My briefs set forth three distinct reasons why there's insufficient evidence for the Klein conspiracy conviction. I want to focus on two of them here. First, viewing the evidence in a light most favorable to the prosecution, a rational jury could not have found beyond a reasonable doubt that Mr. Plezia conspired with Jeffrey Stern, the primary personal injury attorney in this larger scheme, and Marcus Esquivel, a case runner, to help Stern evade Stern's taxes. That is the object of the Klein conspiracy. I quoted at length in my reply brief in response to the government's arguments the testimony of Stern and Esquivel. Neither of them said one thing that could be found beyond a reasonable doubt to suggest that there was a discussion in January of 2011 between Stern, Esquivel, and Plezia about a tax evasion purpose concerning Stern. Now, it's very important to remember here. The two points you're attacking on count one are whether there was an agreement, and two, the scienter for the unlawful. That's correct. And so right now you're focused on the agreement. That's correct. And yet your client took the stand and denied any agreement, and therefore the jury could infer from that false exculpatory there was an agreement, right? Well, yes and no. My client did generally testify that he did not conspire. But if you read his testimony, and I did it yesterday again, there's not a single question he was asked specifically concerning the tax evasion aspect of this. So he was generally asked questions about a lot of things, but no one ever posed the question to him. He said Stern gave me money for the benzene tort litigation. Correct. And the jury had to disbelieve that. Correct. But that's not relevant to the Klein conspiracy mens rea issue of is there a meeting of the— You're really focused not that they conspired to defraud. You're focused on did he have the right state of mind, or you want to— No, I'm focused on two things. The first thing is, it would be utterly bootstrapping to take the jury's rejection of Mr. Palicia's testimony and fill in a void that is completely there on the government's part about whether there was any meeting of the minds to evade Stern's taxes in 2011. There was a meeting of mind as to the 1099s. I disagree with that. There was no discussion that in 2011 that we're going to cut you 1099s. A rational jury could certainly find that in 2012—remember, 1099s are not cut the previous year. The 1099s would have been set no earlier than January of 2012, and this conspiracy allegedly hatched in January 2011. Now it's very important also to remember that under this court's precedent in Chandler and the Supreme Court's precedent in direct sales, mere acquiescence with knowledge that somebody who's an alleged conspirator is doing something is not proof of conspiracy. There is a high-level mens rea to be guilty of conspiracy. So even assuming that a rational jury could find that Mr. Palicia knew in 2012, oh gosh, I got a 1099, he must be— I haven't read the record. Tell me succinctly what's the extent of Mr. Palicia's testimony on the stand repudiating his involvement in any agreement? I know you're saying, well, he wasn't asked a single question, yeah, yeah, yeah, but does he ever say expressly or disdain participation in the conspiracy at all? He says, and this is it, record on appeal 5578, he was asked—this is the only testimony I think is— This is the cross-examination of him? Correct. No, no, this was actually the end of the direct examination. Okay. Question from his attorney. Mr. Palicia, did you enter into a conspiracy with Jeff Stern, Marcus Esquivel, or any of the other people named in the indictment to defraud the government? Answer, absolutely not. Okay, now that—why isn't that alone? I mean, it's a risk you take when you testify, but at that point, the jury could conclude oppositely, he's a liar. We don't believe his benzene story, so he's a liar when he says he didn't conspire. It would be bootstrapping to use that to fill in a void that completely is there on the government's part. Credibility is critical, and he's on the stand. I mean, what do you mean it's a fill-in? There is nothing in the government's evidence. Nothing. Well, when you say that, they do cross-examine him, and they ask him about, aren't there tax consequences for pass-throughs? When you pay referrals, doesn't that have tax consequences? The government asked him. I'm not disputing that as of 2012, the jury could find Mr. Palicia realized, okay, Stern's writing this off on his taxes. I don't dispute that. So it's purely a temporal argument. It's a temporal argument, that's right. The scheme, and remember, Mr. Stern testified he had no communication with Mr. Palicia until 2016. I'm assuming the jury was told, or maybe even the indictment says on or about, because there's flexibility. Correct, but you've got to remember, the testimony from Stern and Esquivel was, this plan was hatched in January 2019. No, I understand your argument. Is that the argument that was made by the defense in closing? There was evidence of mens rea and a conspiratorial agreement. It's just not when the indictment says it happened. So the government is varying its proof from its charging document. Is that an argument that's been made? Was it made in closing, and is that a legal argument? This is a variance. The government convicted him on something they didn't charge. I make a variance argument about something else. I'm not making a variance argument here. I'm making an argument, and this is sufficient and consistent with the Rule 29 motions, that the government has not proved, even taking the evidence in a light most favorable to the government, even looking at the jury's discrediting of Mr. Palicia's testimony, there's nothing showing a meeting of the minds during the time the government alleged it happened, which would have been January 2011. Any meeting of the minds? Any meeting of the minds. Well, meeting of the minds. Or as to a tax fraud. As to a tax fraud. That's the key. So it's really not two separate insufficiencies. It's the two together. Because clearly he, the jury didn't believe that this was all financing for benzene. Of course they didn't. I can see that. You've got to remember something. This is not a wire fraud. This is not a, you know. But you're not arguing that in a client conspiracy, the government's got to prove the highest level of scienter. Correct. And that's my next argument. All right. Go ahead. So the second argument, which is even assuming for the sake of argument, they have proved sufficiently that, you know, there was some belief that this could have tax consequences in 2011 through 2013. Even assuming that's true. And I would like to come back when I'm finished with this argument and discuss the 2016 to 2018 things that are clearly outside of the indictment. But back to this issue. I'll call this one the Cheek-Menzraya issue, right? Remember there is alleged tax fraud. You have to show not just the normal Menzraya. You have to show the defendant specifically knew under the tax laws, this was improper. Which was an instruction you got here. Correct. That's correct. I'm not challenging the jury instructions. This is purely. No, I'm asking you, was the jury instructed that they had to reach a cheek level of scienter? I believe they were. I believe they were. So regardless, the Supreme Court has said, what are in the jury instructions don't dictate an appellate court's sufficiency analysis. You look at the statute for that and the case law interpreting the statute, which is Cheek. So what we have is a statute that's, and this is how, this was the entire government's theory of tax fraud, is 26 U.S.C. 1962 C2 says you cannot write off kickbacks. The government's entire theory was this, the payments that were being funneled through these attorneys, Mr. Pleasure being one, were kickbacks in violation of Texas's Baratree statute and in violation of the Texas disciplinary rules of professional conduct. And that therefore they were non-deductible. Now here's the problem, and I call your attention to the Ninth Circuit's decision in Standard, which I repeatedly quote from in my briefs, it was a very, very similar case under California law with a California statute and California ethics rules. The government in that case called two witnesses, a prosecutor and a member of the state bar, who testified, these kickbacks are definitely something we prosecute vigorously and we will take somebody's license away. There wasn't a shred of evidence that was proven in this case. In addition, the, the, uh, there's no substantive tax charge here. It's a client conspiracy. Okay. So what's your best case that a client conspiracy, the Sienter has to go to 162 and general enforcement Cotwits. The 11th Circuit, the one you just cited, correct? This is an issue of first impression in the Fifth Circuit. I don't think these cases are brought very often, uh, which is perhaps relevant to the generally enforced part, but regardless, Cotwits specifically says, Oh, Cotwits. Okay. I thought that was 11th Circuit. It is 11th Circuit. Oh, it is. It is. I thought you, okay. It's sites to cheek. It specifically says there must be a beating of the minds to evade taxes. Let me make it clear. I'm not saying there's insufficient evidence that they conspired to disguise money. That's not my argument. It's that their specific purpose to disguise money was to help Stern evade taxes for 2011. Cotwits just says the state of mind is to impede the IRS function. Correct. It doesn't, it doesn't say state of mind to know whether something's generally enforced in understate law. Well, you have to, well, they cite cheek. You have to remember that the government's theory of the case was it was to write off these kickbacks as deductions to reduce Stern's taxes. So it is tax evasion. There's no other way to characterize it here. And then I thought they addressed that by offering 404B that in fact your client himself was doing that. Different, completely different thing. What my client did, there was not a shred of evidence. Anyone talked to my client about his own tax filings, that was never charged as part of the conspiracy. But it would be 404B. It would go to a state of mind. It does, but it happened after, long after the alleged conspiracy. And I don't see how that goes to Stern's state, Stern's tax filings. Mr. Pleasure received a 1099, according to the government, in 2012 and 2013. And when he got those, he responded and filed taxes. You get a 1099, you're going to file taxes. That does not speak to whether he conspired in January of 2011 to help Mr. Stern evade his taxes. Let me go back to the generally enforced thing, the second argument I'm making. The what? The generally enforced requirement. This is, this requires the government to assume the role of the IRS for purposes of a criminal prosecution. They've got to prove everything that would have been proved if this had simply been an enforcement action by IRS to collect taxes or to disallow deductions or whatever. And in that instance, they would have had to prove that Texas's barratory statute, the kickback portion of Texas's barratory statute, not the general ambulance chasing part, because that's not what you'd get, that's not what excludes you from deducting something. It's the kickback portion. They would have had to offer witnesses and evidence, as they did in the standard case, that the kickback statute was generally enforced, barratory statute 38.12 of the Texas Penal Code, and they would have had to prove that he could have lost his license, one of those two things. They did not prove that. The only witness where the words generally enforced come out of somebody's mouth were Michael Watts, a defense witness who said, this is not generally enforced in Texas. And they offered nothing to rebut that. So there's just no way the government has proved beyond a reasonable doubt that Mr. Pleasia had the heightened mens rea required for the object of the Klein conspiracy, which is Mr. Stern's evasion. I'm going to guess when I look at standard, it's a 162 case. It's not a Klein conspiracy. Maybe I'm wrong. No, no. Okay. It's a criminal prosecution. It may be a criminal prosecution, but, well, anyway, we'll see. You just got amended 15, so you may have other issues. Okay. So I also have raised other issues challenging the 1519 conviction. I've challenged venue, and I have challenged equitable tolling. Equitable tolling is the easiest one. You don't equitably toll a criminal statute of limitations. There's nothing in the language of the statute of limitations. If it was ambiguous, we went under the rule of lenity. It's not even ambiguous because there is nothing about equitable tolling. Your position there is bright line rule. No court has ever done this. What the government's asking. Correct. Well, maybe a couple of district courts during COVID. Notably, the Department of Justice went to Congress in the early days of COVID and said, please pass a statute that lets us total the statute of limitations in view of COVID. And Congress did not do it. It's not this court's job to do it. It's Congress's job. 1519. The government relies on Huffman Vail, the 11th Circus decision in Huffman Vail. That case used in relation to language. That was not charged in the indictment in this case. But, I mean, federal agencies, the way they get information is through grand juries. Correct. This would be a seismic ruling if we were to say, there's no 1519 when you submit a false document to the grand jury in response to a subpoena. It would not be seismic, and let me tell you why. If they would have charged it properly, there's, and I mentioned this statute in my briefs, there's a statute that says if you give false evidence to a grand jury, that's a felony just like 1001, just like 1519, depending on the circumstances. This would make no seismic ruling. They charged the wrong statute. Are there any questions? Other issues you raised, you mentioned, excuse me, the equitable tolling, and you had some about venue. I mean, you rest on your brief on that. I don't quite know where you're going with that. And then this admissions of statements, I mean, they're part of your brief, but the main thrust of your arguments is what you presented to us here. It's right, but I'm not meaning to suggest I don't want those other issues out there. I know. I know. I'm just asking. Correct. You're resting on your brief on those issues. Correct. And if I have time and rebuttal, I might come back to those issues. Okay. All right. That works. Thank you. Thank you. All right. Ms. Maness. Thank you, Your Honors, and may it please the Court, Audrey Maness for the United States. This Court should affirm the jury heard extensive evidence over 15 days of trial and determined that Mr. Pleasia voluntarily participated in a conspiracy to disguise illegal payments for personal injury cases from the IRS in a manner that defrauded the United States. The jury also heard and decided that Pleasia lied to federal agents multiple times during the course of this conspiracy. This obstruction and other uncontrollable events, namely COVID-19 and its specific effect on the Southern District of Texas, slowed the investigation and the district court was presented with the unusual question of whether equitable tolling can apply in a criminal case. The court rightly determined that it did and applied it here for one particular claim. Pleasia's misleading conduct continued even at trial when he waited until after the government rested its case to inject a venue issue on Count 6. The district court rightly denied his later motion for acquittal on that count. And more broadly, the district court expertly managed this trial, including when making evidentiary rulings regarding witnesses' years-old interview notes. I'm happy to address any particular issue. Their overwhelming focus is basically the scienter for the Klein conspiracy and did you offer proof. So one, do you agree with his characterization of what level of state of mind had to be shown and then he ties it temporally that it had to be shown as of the time that the agreement was said to have occurred. Do you want to respond to that? Certainly, Your Honor. I disagree that the focus, he characterizes the object of the conspiracy was to help Stern submit false taxes. I don't think that the focus of the conspiracy needs to or was that detailed. The focus of the conspiracy was to impede the lawful function of the IRS. And how did they do that? They disguised these pass-through payments. There's plenty of evidence to show that Pleasia knew this is exactly what was going on. Stern and Esquivel agree in early 2011 that they're going to use this pass-through scheme to cover up illegal payments. And why are they doing that? Both Stern and Esquivel know that Stern has gone through a couple of big audits recently and that they- But let's accept that in his benzene story flopped. Yes, absolutely. But let's then accept that he knew he was involved in bearetry. His argument I think now refined is the jury didn't hear anything that he knew he was helping Stern do something illegal as to the IRS because, in fact, he was doing the same thing. And they both thought they could deduct because they didn't look at the intricacies of 162. Where is the best evidence? Do you not have to show that? Or where's the best evidence that shows that state of mind? I don't think we have to show that level of detail, but I think the evidence more than supports it. Again, because the jury can infer. So we have a sophisticated player here, Mr. Pleasia. He's been practicing for 20 years. He testifies himself. I know bearetry is illegal. I know it would be improper to claim these pass-through payments as income on my taxes. Okay. Now, when you say he testified, he said he knew it would be improper to claim them on his taxes. Do you have a record site for that? For Pleasia- Is that cross-examination? Yes. It's in the cross-examination. Okay. Well, that would be pretty significant. And so he's a sophisticated person. He knows that this is wrong, and yet he's doing it anyways. When he's receiving these checks that are carried from Esquivel, from Stern to Pleasia, we have testimony from Stern's office controller saying that we would normally deliver a check with a check stub, and indeed, some of those check stubs are in evidence. And they show. It says referral fee. Pleasia knows very well that those are not referral fees for him. They are instead referral fees for Esquivel. Right. But that would again go, he's doing a bearetry. But- He's also- How does he know Stern's trying to double-dip, basically? Right? That's what Stern was doing. Well, he's assisting in an illegal kickback, of course. Because- He's assisting. Assisting. Yes. Yeah. Yes. Go ahead. Excuse me. So, certainly, there's the evidence that he's a sophisticated player. He knows what's going on here. He knows it's illegal. In your brief, you were a little equivocal about whether Kotwicz does say the state-of-mind requirement. Do you accept Kotwicz? You think that the- I don't see how it wouldn't. I think Kotwicz is close. I think the better case is United States v. Green out of this court in 2022. That's 47F4279. Is that in your brief? It is. Okay. And it very clearly lays out the elements of conspiracy to defraud the United States. And I will say, as it goes to 162C, Green speaks- well, it's not a 162C case. It is a tax fraud conspiracy case. Green says, the government does not need to prove in a minutely detailed fashion that interference with a particular statute or procedure was the goal of the conspiracy, but can instead define the object of interference at a higher level of generality. And I think that's precedent from this court, saying that it is enough for the government to say, hey, there was a meeting of the minds here to impede the function of the IRS and defraud the United States to disguise these payments. Was Pleasia's own deductions for those offered as 404B? Am I right about that? Yes. Pleasia's tax returns were submitted as evidence. That's correct. So, and I, and I know, understand that counsel has acknowledged that certainly when Pleasia received the 1099s, now, the government's position is that's just confirming that Pleasia was already participating in the conspiracy and it's further evidence that he knew exactly what was going on here. Indeed, he accepted the 1099, he made the claims on his own tax returns, and he continued to do that 2012, 2013, and then 2014 when he received the 2013. Pleasia's still out. He's out pending appeal? That's correct. He is out. What was the substantial likelihood of issue that Judge Rosenthal found? My understanding is that Judge Rosenthal recognized that this case raised at least a couple of novel issues, including the equitable tolling. Well, you've got plenty of time, but that is, to me, the hardest issue here. I understand. And I can turn to that right now, if you'd like. I think the district court got it right here, that equitable tolling can apply. It applies sparingly. It is, it is in very rare cases, and that is, that is. Sparingly is never at the circuit level. Not at the Third Circuit. Well. The Third Circuit has said that it can apply in criminal cases. It has not applied it. It has not found that the high bar has been raised. Sparingly is never. It's never been applied by any circuit. Is it available, is the, is the question. And that's the Midgley case? That's, sorry. Midgley? Yes, Midgley. And Midgley cites a civil case for the authority, right? That's right. That's right. I will say, but when the Supreme Court has addressed this, and again, I recognize, it is only in civil cases. The difficulty is the plain text of 3282, right, because it says, accept as provided by law. And then Congress thought of just about everything, fugitives, wartime, waiver, but it didn't say pandemics. It did not. But the, these accept as provided by law has been addressed in other contexts, and that does not preclude equitable tolling. For example, the Supreme Court in Holland versus Florida said, we recognize that there are other statutory tolling exceptions already built into the statute. But that's not enough to preclude a general, general principle of equitable tolling. And I think that same principle can be applied here. In the criminal context. In the criminal context. But here, Congress says, we don't want pre-accusation delay, government. No. You've got five years, and that's it, unless we've written an exception. But now what you're asking us to do is say, well, it's in the discretion equitably of district courts to do just what Judge Rosenthal did, which is, were you really prejudiced? Did you have notice? That would be a really big change in the law. I disagree. I point the court to United States versus Wong, another Supreme Court case, where the court said that even when Congress speaks emphatically, like as the Congress does in 28 U.S.C. 2401, where it says, a suit shall be forever barred, equitable tolling applies there. So Congress has not even spoken, I think, as emphatically here in the criminal context. And there's no suggestion that the criminal statute of limitations is jurisdictional. Certainly not other provisions of 3282 actually refer to it as a limitations period in a non-jurisdictional language. And the Supreme Court has said repeatedly, for non-jurisdictional statute of limitations, there's a presumption that tolling applies. The trouble is this case illustrates the problem with that, because if I remember the facts, it really wasn't just the pandemic. It was the truth that it's really hard to get a warrant approved by IRS. There are multiple factors for the tolling here. I don't think that's the government. That's not adequately presented on appeal, though. The only issue presented on appeal is, is equitable tolling ever available in criminal cases? Not whether, was it properly applied? Well, I suppose they're saying it was an abuse, even if it were, it was an abuse here. Abuse by misunderstanding the law, I suppose. But why should this case be the case to answer their question? Because we just dealt with a once-in-a-century pandemic. And I think if we don't deal with it here, it may very well present itself again. You're saying no other federal prosecution in the country, because of the pandemic, needed this special exception? No, you've seen a few district court cases cited in the brief. We have not seen it at the circuit court level, I understand. But prosecute, prosecute. What about Katrina? Of course, I lived through it, so I'm thinking that. Yes. There were no cases out of there where the government said, we just didn't have time, give us a little break? None that I found, Your Honor. No. That's sort of remarkable. I agree. To me, it suggests the government, like wartime is pretty amazing, but Congress thought of it. Fugitives. That's right. That's right. Congress has. If we do reverse on count five, is there no implication as to the other counts, especially count one? No, I do not believe there's any implication. So, there were no manner and means description in count one of count five's criminal conduct? No, it was a discreet lie made during an interview with IRS agent Simpson. So, there's no impact on count one. But I don't think you should reverse on count five. We know you don't think we should, but that's a long ways from why this case is there. It is sort of incredible to me out of all the prosecutions that occurred during COVID that this issue didn't crop up to that degree, blah, blah, blah. Anyway, it's a little mind boggling. Judge Rosenthal said this is a difficult issue, right? Absolutely. And you're acknowledging it. I think everyone agrees that it is a difficult issue. It is a rare issue, and I would hope that it would not become a regular occurrence. I don't think it would. You're saying it only has to count five? Only has to count five. Well, he only got, what, six months for all this? He had 12 months in one day, six months of home confinement, and six months of prison. Even without count five, six months is his max, right? I mean, what's the effect theoretically on it? So many count fives out. He got 12 months. He got six. I mean, what's the significance? You follow what I'm saying? I'm saying sentence-wise. For this case, I do not believe there is any impact. There won't be any impact on the ultimate sentence if you reverse on count five. However, this does present an issue that's broader than this case, certainly. The 1519 issue is big, too. Yes. Yes. And we think you should affirm on the 1519 issue. On the 1519 issue, the— Well, before you go there, let me take you back on the earlier question. Since counsel's office is really honing in about specific intent, you cited green, which I found on page 50 in the last sentence of page 50 of your brief, but it's cited there just generally for, you know, the object of the conspiracy to defraud. I don't see anything in the brief about specificity of mens rea, et cetera, et cetera. So is the response, you know, I'm going to have to read the case to get down into it? Because the brief itself doesn't iterate. It's at the bottom of the page, and it moves on to other things. So I know you cited the case, but I'm saying I was looking in the narrative to see, okay, where in here does that address his principal argument? I don't see in the brief. I didn't remember it, and so I turned to it. Understood, Your Honor. No, I would direct you to the case itself. And while I was preparing, I identified that it's really the best case on the conspiracy 371 charge. All right. Got you. You can move on to where you want to go. Thank you. Judge Higginson, you brought up the 1519 point. Well, I guess I'm just wondering, is the government's position that any time anyone responds to a subpoena by a grand jury and includes a document that has a material false statement, is that a 1519 violation? Because it would always connect back to some investigating federal agency. It depends. 1519 is broad language, and I think all the cases that have addressed 1519 recognize that. The question is, was the document falsified or destroyed or mutilated with the intent? This is his letter. Yes. This is the 2010 Benzene Agreement letter. Yes. Was it made with the intent to impede an investigation? You don't need to know if the investigation is state or federal. This court said that in United States v. McRae. You don't need to even know that an investigation is going on, but you're concealing some evidence for something in the future. It is broad language. The court has upheld it time and again. And then the question is, there's this jurisdictional hook. Is the investigation within the jurisdiction or a matter within the jurisdiction of a federal agency? And the investigation here certainly was. It was an investigation being run by the IRS Criminal Investigations Unit. Yeah. What's the most salient matter that you got out of Plessy's testimony on Cross as relates to what you've charged? Or, in other words, the defendant here took the stand, which is always noteworthy. Yes. And so you heard counsel's argument about that. Yes, he agreed to this, but not that. And so I'm just asking you, what's the most significant aspect as relates to the government's proof that was gleaned from his testimony on the stand? So, when Plessy testified on the stand, he was emphatic that he had never engaged in paying a case runner. He knew it was illegal. He knew it would be wrong to claim it on his taxes. And yet, the jury was entitled and did disbelieve his testimony as to what his view of the payments were. And they could have taken from all of the other evidence, the accountants that testified, Mr. Stern's testimony, Esquivel's testimony, that indeed this was a scheme to cover up payments to hide them from law enforcement. And law enforcement includes the IRS. We are covering this up to keep this lucrative, yet illegal, case-running scheme going. And the jury could readily infer that, and including Judge Higginson emphasized that Mr. Plessy did get up and testify, and the jury's allowed to make an adverse inference. This court has said it time and again in United States v. Casilla and other cases. And so there's evidence from Plessy's testimony, but also, again, the evidence from other witnesses as well. Did any witness, does the record contain any evidence as to whether Texas criminally prosecutes Baratree, and or is that irrelevant legally? I don't believe it is relevant, because the object is more broadly defined as to impede the lawful function of the IRS. But certainly there is evidence in the record that Texas prosecutes Baratree. Mr. Stern testified in 2015, one of his own runners was arrested for Baratree. Mr. Simpson, the IRS CI agent, testified that he has been involved in investigating four to five Baratree cases over his career. Again, the Baratree statute did not go into effect until 1997, so we're looking at a handful of cases a decade. And then there's all the enforcement efforts that Texas takes to educate its lawyers on Baratree. No sentencing in this issue. Do you know whether he was, was he given two points for perjury? I do not know that off the top of my head, Your Honor. And I will point the court again, which the district court was aware of the case voucher versus commissioner of the IRS, which is a state law may be considered enforced if there are education efforts. And again, we all know as attorneys here that we take those education efforts seriously about Baratree. If there are no further questions, again, I'd ask that this court affirm across the board and find that in rare and extraordinary circumstances, equitable tolling may be available in criminal cases. Thank you, Your Honors. All right. Thank you. All right. Counsel. Thank you. To count one, the issue is not whether, and this relates to the, what I'll call the cheek mens rea issue. The issue is not whether Texas ever enforces the Baratree statute, in particular the kickback portion of the Baratree statute. The issue is under 26 U.S.C. 1962 C.2, is it generally enforced? There is nothing in this record to prove that. The only thing in the record where the words generally enforced were ever mentioned was a defense witness who said it's not generally enforced. That's the critical question. It doesn't matter whether Mr. Plescia testified, you know, however many years later, over a decade later, nearly a decade later, that, okay, I shouldn't have deducted, or, okay, it wouldn't be proper to deduct it, whatever it was he testified to. That's not the issue. The issue is, has the government proved in the relevant time period, in the indictment in Plescia's role, 2011 through 2013, 2011 taxes, 2012 taxes, and 2013 taxes for Stern, was the kickback provision of the Baratree statute generally enforced in Texas? No, there's no proof of that, end of story. The government's argument that, well, they had these CLEs and that's enforcement, the Boucher case did not say if you hold a CLE, that enforces a statute. One might surmise that with proliferation of advertising today that the old game of running cases has just been diminished. It's a vestigial past, a history of the past. It's legal to, there's a barrage of advertising, right or wrong, and in that environment, which is, to my mind, a more recent origin, the old Baratree provisions almost become vestigial. And I won't expand further on that, but that is a background to this prosecution itself. Well, Baratree, as we traditionally defined it at common law, is not giving kickbacks. It's sending yourself or someone else to. I understand. So it's the kickback that matters. That's the key, the kickback part of the Baratree statute, and we'll call it the kickback statute, not the Baratree statute, and then the provisions in the Texas Disciplinary Rules of Professional Conduct. There's no evidence they were generally enforced. That's what Section 1962C says. Now, I want to also call your attention to the indictment. Why don't you speak to Greene, if you're familiar with it? I admit that I did not read every single case they cited as a see-also cite, and she's making a proposition that that stands for something that's not specifically articulated in the brief. I read the main case she cited, and it doesn't... You don't know the details. That's fine. I don't, but I do know Cotswet specifically addresses this very issue about the level of mens rea required in a case involving... Oh, I thought in the 11th Circuit it just said, state of mind to impede the IRS. It didn't get more granular. It cites cheek. It cites cheek, but that's not necessarily saying you've got to have state of mind down to enforcement level. Your Honor, it cites cheek for the proposition cheek was decided on, which is you have a heightened level of mens rea in a tax evasion case. Well, just because it cites it, I mean, lawyers cite a lot of stuff, but, you know, when we pull the case and read it, you know, it's not necessarily dead on point. She doesn't put it in the brief, but she cites Greene, and I just asked her, you know, and you heard what she said, as far as I'm concerned, if it's cited in the brief. We're going to look at it. She says it drills down and speaks to this mens rea. Well, my research in the Fifth Circuit is no Fifth Circuit case has ever addressed this issue before the Court raised right now. I'd like to call this Court's attention to the third superseding indictment. Page 7 of the third superseding indictment, Record on Appeal 259. It's in the record excerpts. The definition of the scheme. The scheme refers to Stearns hiding his business income for purposes of taking improper deductions. So this is effectively a scheme to evade taxes. That's how it's pled. Under the Chambers case, this Court must assess the sufficiency of the evidence in the way the indictment specifically pleads something. Now, I want to address the... Are you saying there's a variance in the indictment? No, I'm saying that in assessing sufficiency of the evidence on appeal, you must look at not only the way the statute is charged, such as the in-relation provision in 1519 not being charged, you also have to look at how it defines the scheme at issue. And the scheme at issue here is Stearns' attempt to evade taxes, which is not possible if it's not generally enforced. Well, okay. You don't have an issue with respect to any of the jury instructions that were given. Just roll along, careful. You don't make an argument that there is a variance in the indictment. There's not an issue that legally with respect to that. So in a 15-day trial where the defendant testifies, etc., putting aside this tolling issue and the other, your argument is that the jury could not have made the necessary inferences, following the jury instructions, etc., etc., to sustain the conviction. You're saying there's no evidence that the jury could not have. I'm making that argument about my first two attacks on count one. I do make a variance argument on count one in my third argument, which I've not addressed today. That's in the briefs. Okay, just tell me so I remember. What's your variance argument? They charged a broad conspiracy. They charged it with Stern, Pleasia, Esquivel, Stern, Bradley, Radcliffe, Stern, Abner, Morris. And my position is the alleged conspiracy with Mr. Pleasia and Mr. Esquivel is a distinct conspiracy from the other, and that this is a kodiakus problem. There's the hub and the spoke and the wheels and all that. There is no commonality between the Stern, Pleasia, Esquivel alleged conspiracy and the broader conspiracy in the indictment. This is a distinct conspiracy and it was prejudicial to Mr. Pleasia because in the opening and closing arguments, the prosecutor made reference to this. Clearly, Pleasia must have done it because Bradley did it. This is not harmless under kodiakus, so it should be reversed as an invariance. For whatever reason, this is treated as insufficient evidence. You want a reversal in a new trial? You want a complete reverse. So we're putting count five aside. The ultimate relief you want is a complete reversal? Entry of acquittal except on the venue issue which is a new trial. This venue is not, Jeopardy doesn't borrow a retrial for insufficient evidence of venue. Alright, I think we have your argument. Thank you, sir. Thank you to the government. The case will be submitted.